UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF NEW YORK
-------------------------------------------------------------x
TIMOTHY MCINTYRE                        :
                                                  :
                          Plaintiff,        :        17-Civ.-3
                                                  :
      -against-                      :        **COMPLAINT**
                                                  :
COMMUNICATIONS SPECIALISTS, INC., d/b/a :
"VANGUARD ENERGY SOLUTIONS," also    :
d/b/a "SOL PROVIDERS,"               :        PLAINTIFF RESPECTFULLY
                                              :        DEMANDS A TRIAL BY JURY
                        Defendant.      :
-------------------------------------------------------------x

Plaintiff, Timothy McIntyre, by and through his attorney, alleges for his Complaint as follows:

**PARTIES**

1. Mr. Timothy McIntyre ("**Plaintiff**" or "**Mr. McIntyre**") is a natural person residing in North Carolina, and who, at all relevant times for this lawsuit, resided in Stormville, New York.

2. Upon information and belief, and according to the New York State Department of State, Communications Specialists, Inc., ("**Defendant**" or "**CSI**"), is an active domestic business corporation in Westchester County, New York.

**JURISDICTION AND VENUE**

3. Jurisdiction is founded upon 28 U.S.C. § 1331 and principles of supplemental jurisdiction under 28 U.S.C. §1367.

4. Plaintiff timely filed a Charge of discrimination with the Equal Employment Opportunity Commission ("**EEOC**").

1

5. Plaintiff received a *Right to Sue* letter, dated October 4, 2016, by mail on October 7, 2016. (**EXHIBIT A**.)   Undersigned counsel received an identical letter by mail a day later. Accordingly, Plaintiff had to file Title VII claims by January 5, 2017, and this lawsuit is indisputably timely.

6. Venue is proper in this district pursuant to 28 U.S.C. §1391(b) because a substantial part of the events giving rise to Plaintiff's claims occurred within the Southern District of New York.

7. Proceedings at the White Plains courthouse are proper because a majority of the events giving rise to Plaintiff's claims did *not* occur in New York or Bronx Counties.

## STATEMENT OF FACTS COMMON TO ALL CLAIMS

8. Mr. McIntyre was employed by CSI from on or around January 9, 2014 until his wrongful termination in October 2, 2014.

9. Mr. McIntyre is a mixed-raced individual with the races of African-American, Puerto Rican, and Native American being the largest genetic components.   Therefore, Mr. McIntyre belongs to the protected class of race ("**Race**").

10. Mr. McIntyre's phenotypical expression is best described as mixed-race, lighter-skinned black, or Puerto Rican.   Therefore, Mr. McIntyre belongs to the protected class of color ("**Color**").

11. Mr. McIntyre's genetic and phenotypical status could lead some to—improperly—believe he is of foreign origin.   Therefore, Mr. McIntyre belongs to the protected class of national origin ("**National Origin**").

12. Mr. McIntyre was an employee of CSI who engaged in Title VII, Section 1981, and FLSA statutorily defined 'protected activity' by advocating for fair and equal treatment for

himself and other minority/colored employees.  Therefore, Mr. McIntyre belongs to the protected class of employees who can be retaliated against ("**Retaliation**").

13. At all pertinent times Mr. McIntyre was fit, qualified, and eager to hold a position at CSI, and he performed his duties in a professional and respectful manner.

14. Upon information and belief, at all pertinent times, Defendant acted or failed to act by and through its duly authorized agents, servants, representatives, partners, manager, supervisors and employees, who conducted themselves within the scope and course of their employment, with intentional malice and/or with reckless disregard to Mr. McIntyre's federal statutory rights.

15. Mr. McIntyre heard fellow co-workers and supervisors make racial slurs on a regular basis.

16. Despite knowing of the language, CSI made no attempt to quell or tamp-down on the language that is often—improperly and euphemistically—characterized as "locker room" or "job site" banter.

17. Within a couple of weeks of starting, in late January 2014, Mr. McIntyre perceived that his paycheck was short for the January 9 – 15, 2014 pay period.

18. Mr. McIntyre approached his Supervisor Rob (last name unknown) in-person and engaged in statutorily protected activity by complaining—in good faith—about a perceived short shortage.

19. CSI Supervisor Rob admitted the error and assured Plaintiff such errors were rare and that he would be compensated on his next paycheck for the missing financial sum.

20. Upon information and belief, Mr. McIntyre was compensated for the missing amount of his next paycheck from CSI.

21. Within a few weeks, in or around late-February 2016, Mr. McIntyre and fellow co-workers were notified by CSI that their pay would switch from hourly to "production," which is a "flat fee" or per-job compensation set-up.

22. CSI promised Mr. McIntyre and his fellow co-workers that the switch from hourly to production pay would result in a net higher level of compensation.

23. In or around early March 2014, Mr. McIntyre worked an entire week, for five days, from approximately 7:00 AM to 10:00 PM at night.   For this approximate seventy-hour workweek, Mr. McIntyre received approximately $200.00 dollars.

24. Upon information and belief, Mr. McIntyre's coworkers received compensation below the federal and New York State minimum wage for this week.

25. Mr. McIntyre, again, engaged in statutorily protected activity on behalf of himself and other minority co-workers who were less than fluent in English.  Specifically, Mr. McIntyre approached the owner, Mr. Kenneth Stabler, and the Vice President of CSI, Jay McEwen, with his complaint of inadequate pay.

26. After some back and forth, CSI promised Mr. McIntyre it would look into the inadequate pay situation.

27. Upon information and belief, Mr. McIntyre (and other coworkers) never received appropriate compensation for that week at-issue.

28. In or around July 2014, the botched and inadequate pay system became so bad that three (or perhaps four) Latino minorities walked-off the job and quit because of CSI's failure to pay minimum wages.

29. Upon information and belief, two Supervisors, John (last name unknown) and John McClean quit because their own and their subordinates pay was inadequate.

30. Throughout July 2014, August 2014, and September 2014, Mr. McIntyre made several other verbal complaints of inadequate minimum wage payments, inadequate overtime payments.

31. Specifically, Mr. McIntyre made it known that he was advocating on behalf of not only himself, but other minority coworkers, because Mr. McIntyre was fluent in English and some of his fellow coworkers had immigration statuses that could be used against them and/or because those coworkers were not fluent in English.

32. Apparently CSI grew tired of Mr. McIntyre's advocacy on behalf of himself and coworker minorities, because on October 2, 2014 CSI terminated Plaintiff for the pretextual justification of damaging a CSI work truck.

33. As a threshold matter, Mr. McIntyre was authorized to be driving the work truck.

34. The work truck only suffered approximately $50.00 dollars worth of damage.  This number is taken in the context that, upon information and belief, a work truck suffered $18,000.00 dollars worth of damage and that white driver was not terminated.

35. Most importantly, Mr. McIntyre was not driving the truck and did not have the (minor) accident in question.

36. Indeed, CSI knew when it terminated Mr. McIntyre that he was *not*, in fact, the driver, however CSI went through with its retaliatory and discriminatory termination of Mr. McIntyre despite the truth.

37. Mr. McIntyre's status as a member of a protected class(es) was a motivating and/or but-for factor for the adverse employment action(s) CSI interposed.

## FIRST CLAIM
(Race/Color Status-Based Discrimination
Arising Under Title VII)

38. Plaintiff incorporates by reference the preceding paragraphs as if fully stated herein.

39. This claim is premised upon Title VII of the Civil Rights Act of 1964, as amended, codified at 42 U.S.C. § 2000e, *et seq*.

40. Plaintiff is authorized to bring this Title VII status-based claim (**Exhibit A**).

41. At all relevant times, Mr. McIntyre was an "employee" under Title VII, 42 U.S.C. § 2000e(f).

42. CSI is an "employer" under Title VII, 42 U.S.C. § 2000e(b).

43. Mr. McIntyre opposed CSI's unlawful, discriminatory employment practices, and engaged in protected activity under Title VII.

44. Specifically, CSI, *inter alia*, discriminated and retaliated against Mr. McIntyre when the company, imposed disparate treatment, harassed, and otherwise treated Mr. McIntyre unfavorably as compared to similarly situated, non-protected class coworkers subject to the same supervisor(s), manager(s), procedures and rules, by, *inter alia*, failing to pay Mr. McIntyre a minimum wage, failing to pay Mr. McIntyre proper overtime, failing to investigate his numerous verbal complaints and protected activities, strictly interposing an otherwise facially neutral company policy in a discriminatory manner, and otherwise subjecting Mr. McIntyre to adverse and unfavorable employment actions.

45. CSI retaliated against Mr. McIntyre for having engaged in the protected activity by, *inter alia*, terminating his employment in violation of Title VII.

46. Upon information and belief, Defendant's actions were done intentionally or with reckless indifference to Plaintiff's federally protected Title VII rights.

47. As a direct and proximate result of intentional and/or reckless Defendant's actions, Plaintiff was terminated or otherwise not allowed to work, and suffered lost wages and benefits, as well as humiliation, inconvenience, mental distress, and embarrassment.

## SECOND CLAIM
(Protected Activity Retaliation
Arising Under Title VII)

48. Plaintiff incorporates by reference all preceding paragraphs as if re-alleged and stated fully herein.

49. This claim is premised upon Title VII of the Civil Rights Act of 1964, as amended, codified at 42 U.S.C. § 2000e.

50. Plaintiff is authorized to bring this Title VII retaliation claim (**Exhibit A**).

51. Mr. McIntyre opposed CSI's unlawful, discriminatory employment practices and engaged in protected activity under Title VII.

52. Defendant's retaliatory treatment of Plaintiff because of his protected activity in advancing his and other coworkers' Title VII rights was in violation of, *inter alia*, Title VII, 42 U.S.C. § 2000e-3.

53. Defendant's actions were done intentionally or with reckless indifference to Plaintiff's federally protected Title VII rights.

54. As a direct and proximate result of intentional and/or reckless Defendant's actions, Plaintiff was terminated or otherwise not allowed to work, and suffered lost wages and benefits, as well as humiliation, inconvenience, mental distress, and embarrassment.

## THIRD CLAIM
(Race/Color Status-Based Discrimination
Arising under 42 U.S.C. Section 1981)

55. All preceding paragraphs are incorporated by reference as if fully stated herein.

56. This claim is premised upon 42 U.S.C. § 1981.

57. In *McDonald v. Santa Fe Trail Transp. Co*, the Supreme Court of the United States unambiguously clarified that Section 1981 applies to all persons—regardless of race, mixed-race, or any other racial status.  427 U.S. 273 (1976).

## FOURTH CLAIM
(Protected Activity Retaliation
Arising under 42 U.S.C. Section 1981)

58. All preceding paragraphs are incorporated by reference as if fully stated herein.

59. This claim is premised upon 42 U.S.C. § 1981.

60. The Supreme Court has explicitly authorized Section 1981 retaliation claims in *CBOCS West, Inc. v. Humphries*.  553 U.S. 442 (2008).

## FIFTH CLAIM
(FLSA Retaliation)

61. All preceding paragraphs are incorporated by reference as if fully stated herein.

62. This claim is premised upon the entire FLSA, and specifically 29 U.S.C. § 215(a)(3).

63. Defendant's actions were done intentionally or with reckless indifference to Plaintiff's statutorily protected federal disability rights.

64. As a direct and proximate result of intentional and/or reckless Defendant's actions, Plaintiff was terminated or otherwise not allowed to work, and suffered lost wages and benefits, as well as humiliation, inconvenience, mental distress, and embarrassment.

## SIXTH CLAIM
(FLSA Failure to Pay Minimum Wage)

65. All preceding paragraphs are incorporated by reference as if fully stated herein.

66. This claim is premised upon 29 U.S.C. §§ 201, *et seq.*

67. Upon information and belief, Mr. McIntyre is owed more than $1,000.00 dollars in FLSA compensation for failure to pay minimum wages throughout his employment with CSI.

68. Defendant's actions were done intentionally or with reckless indifference to Plaintiff's statutorily protected federal FLSA rights.

69. As a direct and proximate result of intentional and/or reckless Defendant's actions, Plaintiff was terminated or otherwise not allowed to work, and suffered lost wages and benefits, as well as humiliation, inconvenience, mental distress, and embarrassment.

## SEVENTH CLAIM
(FLSA Failure to Pay Overtime)

70. All preceding paragraphs are incorporated by reference as if fully stated herein.

71. This claim is premised upon 29 U.S.C. §§ 201, *et seq.*

72. Upon information and belief, Mr. McIntyre is owed more than $1,000.00 in FLSA compensation for failure to pay overtime.

73. Defendant's actions were done intentionally or with reckless indifference to Plaintiff's statutorily protected federal FLSA rights.

74. As a direct and proximate result of intentional and/or reckless Defendant's actions, Plaintiff was terminated or otherwise not allowed to work, and suffered lost wages and benefits, as well as humiliation, inconvenience, mental distress, and embarrassment.

## EIGHT CLAIM
(New York Wage Theft Prevention Act - Retaliation)

75. All preceding paragraphs are incorporated by reference as if fully stated herein.

76. This claim is premised upon all sections of New York's Wage Theft Prevention Act ("WTPA").

## NINTH CLAIM
(New York Wage Theft Prevention Act
Failure to Pay Minimum Wage / Spread Hours)

77. All preceding paragraphs are incorporated by reference as if fully stated herein.

78. This claim is premised upon all sections of New York's Wage Theft Prevention Act ("WTPA").

79. This claim includes any unpaid "spread of hours" wages for shifts over ten hours, which upon information and belief, Mr. McIntyre worked numerous from January 2014 through October 2014.

## TENTH CLAIM
(New York Wage Theft Prevention Act
Failure to Pay Overtime)

80. All preceding paragraphs are incorporated by reference as if fully stated herein.

81. This claim is premised upon all sections of the New York's Wage Theft Prevention Act ("WTPA").

**WHEREFORE**, Mr. McIntyre respectfully demands judgment against CSI, as follows:

**A.** On his First Claim (Title VII Status), back pay and front pay in amounts as yet undetermined (including benefits and wage supplements), compensatory damages and punitive damages to the maximum extent permissible by law, attorneys' fees, interest, and costs;

**B.** On his Second Claim (Title VII Retaliation), back pay and front pay in amounts as yet undetermined (including benefits and wage supplements), compensatory

damages and punitive damages to the maximum extent permissible by law, attorneys' fees, interest, and costs;

C.  On his Third Claim (Section 1981 Status), back pay and front pay in amounts as yet undetermined (including benefits and wage supplements), compensatory damages and punitive damages to the maximum extent permissible by law, attorneys' fees, interest, and costs;

D.  On his Fourth Claim (Section 1981 Retaliation), back pay and front pay in amounts as yet undetermined (including benefits and wage supplements), compensatory damages and punitive damages to the maximum extent permissible by law, attorneys' fees, interest, and costs;

E.  On his Fifth Claim (FLSA Retaliation), back pay and front pay in amounts as yet undetermined (including benefits and wage supplements), compensatory damages and punitive damages to the maximum extent permissible by law, liquidated damages, attorneys' fees, interest, and costs;

F.  On his Sixth Claim (FLSA Failure to Pay Minimum Wage / Spread Hours), back pay and front pay in amounts as yet undetermined (including benefits and wage supplements), compensatory damages and punitive damages to the maximum extent permissible by law, liquidated damages, attorneys' fees, interest, and costs;

G.  On his Seventh Claim (FLSA Failure to Pay Overtime), back pay and front pay in amounts as yet undetermined (including benefits and wage supplements), compensatory damages and punitive damages to the maximum extent permissible by law, liquidated damages, attorneys' fees, interest, and costs;

11

**H.**   On his Eighth Claim (New York WTPA Retaliation), back pay and front pay in amounts as yet undetermined (including benefits and wage supplements), compensatory damages and punitive damages to the maximum extent permissible by law, liquidated damages, attorneys' fees, interest, and costs;

**I.**   On his Ninth Claim (New York WTPA Failure to Pay Minimum Wage / Spread Hours), back pay and front pay in amounts as yet undetermined (including benefits and wage supplements), compensatory damages and punitive damages to the maximum extent permissible by law, liquidated damages, attorneys' fees, interest, and costs;

**J.**   On his Tenth Claim (New York WTPA Failure to Pay Minimum Wage), back pay and front pay in amounts as yet undetermined (including benefits and wage supplements), compensatory damages and punitive damages to the maximum extent permissible by law, liquidated damages, attorneys' fees, interest, and costs;

**K.**   Such other and further relief as the Court deems just and proper under the circumstances.

JURY TRIAL DEMANDED
ATTORNEY'S LIEN CLAIMED

**Dated: New York, New York**
        **January 2, 2017**

                                        **Respectfully submitted,**

                                        By: /s/ Jeffrey D. Jones_____
                                        Jeffrey D. Jones, NY #4843363

SDNY #JJ1983
**THE JONES LAW FIRM**
523 East Pine Place
Tulsa, OK 74106-4301
Phone: (574) 876-4715
JJ@JeffreyJonesLawFirm.com

*Attorney for Plaintiff*
*Timothy McIntyre*